UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL LINEBERRY,

    Plaintiff and Counter-Defendant,

                                     Case No. 11-13752

v.                                       Hon. Lawrence P. Zatkoff

JESSICA RICHARDS, LAURA
SHEPARD, VALERIE GIBSON,
and PAULETTE GRIFFIN,

    Defendants,

and

DETROIT MEDICAL CENTER,

    Defendant/Counter-Plaintiff.
                                           /

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 5, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #23) with respect to Plaintiff's cause of action. The Motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

Plaintiff was hired by Defendant Detroit Medical Center ("DMC") in March 2009 as a Student Nurse Associate. Plaintiff was promoted to a full-time Registered Nurse in September 2009. There is no dispute that she was performing satisfactorily. She regularly worked 12-hour shifts, walked, moved stretchers, and administered medications to patients. On January 27, 2011, Plaintiff was moving stretchers at work, and the next day she woke up with excruciating pain in her lower back and leg pain. Plaintiff's physician, Dr. Roth (an employee of DMC), ordered that Plaintiff should not return to work. In early February 2011, DMC approved leave for Plaintiff pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, from January 27, 2011, through April 27, 2011. Plaintiff received $3,636.57 in short-term disability benefits for the period from March 5, 2011-April 16, 2011.

While on FMLA leave (from February 26 to March 2, 2011), Plaintiff took a prepaid, planned trip to Mexico. The vacation was approved by Dr. Roth, who supplied an affidavit that such a trip was not as physically demanding for Plaintiff as performing her work duties and that the trip would not conflict with her recovery. During Plaintiff's leave, co-workers of Plaintiff saw, on Facebook, photos of Plaintiff on vacation, including photos of her riding in a motorboat and lying on her side on a bed holding up two bottles of beer in one hand. Plaintiff also posted on Facebook: (a) pictures of herself holding her infant grandchildren, one in each arm as she stood, and (b) details regarding certain activities, including trips to Home Depot, "watching" her grandchildren and taking online classes. Based on these Facebook postings, Plaintiff's co-workers complained to her supervisors about what Plaintiff's co-workers considered a misuse of FMLA leave.

On March 7, 2011, Defendant Jessica Richards ("Richards"), Plaintiff's supervisor,

responded to Plaintiff's e-mail complaint that Plaintiff had not received a get well card from staff. Richards stated that "the staff were waiting until you came back from your vacation in Mexico to determine the next step. Since you were well enough to travel on a 4+ hour flight, wait in customs lines, bus transport, etc., we were assuming you would be well enough to come back to work." On the same day, Plaintiff sent the following e-mail reply to Richards (emphasis added):

> Jessica,
>
> As far as the airport, customs, etc., goes, ***I was in a wheelchair*** because I couldn't stand that long. As far as the plane goes (3.5 hr. flight), I was up and down the entire flight, but sitting is so much easier on me than standing. I am able to walk short distances, but am unable to stand for more than 10 minutes at a time.
>
> \* \* \* \* \*
>
> ***I want to come back to work as soon as possible and wouldn't have went to Mexico if a wheelchair was not available at both airports so I would not have to stand for any length of time***.

On March 15, 2011, Richards alerted DMC's Loss Time Management Department ("LTM") of her belief that Plaintiff could have returned to work and was misusing her leave. In late March 2011, LTM asked Plaintiff's physician to specify Plaintiff's functional capabilities. Dr. Roth provided restrictions on March 30, 2011, which restrictions were clarified on April 4, 2011. The restrictions were that Plaintiff could stand for only 15 minutes, could not push or pull more than 20 pounds, and could not lift more than 5-10 pounds. On April 13, 2011, Dr. Roth cleared Plaintiff to return to work with no restrictions. On the same day, the LTM notes of Sandra Dicicco state: "Discussed with Sally K[ucharczyk, an LTM manager, and] Brenda Hunt, HRBC [Human Resources Business Consultant]. The EE [employee] will be terminated. Send synopsis of case to Brenda Hunt."

Plaintiff was informed she would need to attend a meeting to be held on April 19, 2011.

Plaintiff, Richards, Dicicco, Brenda Hunt ("Hunt"), Sally Kucharczyk, and Richard McCarty ("McCarty"), director of security investigations for DMC, were present at the April 19, 2011, meeting. The meeting was held because DMC's progressive discipline policy requires an investigative meeting for any hourly employee (such as Plaintiff) who could face termination. McCarty began the meeting by explaining to Plaintiff who he was and the purpose of the meeting. Initially, Plaintiff reiterated her claim that she had to use wheelchairs in all airports on her trip to Mexico. McCarty then reminded Plaintiff that airports have cameras and showed Plaintiff her Facebook postings. Plaintiff then admitted that she had lied about the use of the wheelchairs, as she had never used a wheelchair on her Mexico vacation. At her deposition, Plaintiff testified:

> Q. Is it not true that at the beginning of the [April 19, 2011] meeting, you told the group that you had used wheelchairs?
>
> A. Yes.
>
> Q. Then later on in the meeting, you admitted lying about that, correct?
>
> A. Yes.
>
> Q. Why did you initially lie to the group about using the wheelchair?
>
> A. Because I had lied previously in an e-mail [the March 7, 2011, email to Richards] and I wanted to remain consistent.

At her deposition, Plaintiff also testified, in part, as follows:

> Q. Do you remember telling the group [at the April 19, 2011, meeting] that you had been able to walk through the airports in Mexico to outside ground transportation.
>
> A. Yes.
>
> Q. And that you had been able to stand for over 30 minutes while going through the customs lines?
>
> A. Yes.

\* \* \* \* \*

> Q. And you had been able to hold your two grandchildren that weighed over 15 pounds?
>
> A. Hold them. I didn't – picking them up, I couldn't do, and I didn't carry them.

On April 20, 2011, Hunt, DMC's human resource representative, prepared a document titled "Human Resources Termination Recommendation." This document identified Plaintiff's violations of "HR Policy 321: Leave of Absences: FMLA (Fraudulent continuation with an FMLA Claim)" and "HR Policy 322: Leave of Absences: Medical/General." This document was signed on April 25, 2011, by Richards, Defendant Laura Shepard (Director of Anesthesia), and Defendant Valerie Gibson (Chief Operating Officer). The signature blocks on the document include a place for Defendant Paulette Griffin ("Griffin"), the Vice-President of Human Resources, to sign off on the document, but Griffin did not sign the document. Griffin did, ultimately, approve Plaintiff's termination, however, at which point Plaintiff's termination became effective.

In a letter dated April 25, 2011, Richards authored a letter to Plaintiff that informed Plaintiff that her employment with DMC had been terminated as of that date. The letter indicated that Plaintiff was terminated:

> According to the DMC's Progressive Discipline Policy, 1 HR 506, Major Infraction "Dishonesty, falsifying or omitting information, either verbally, in written format (including electronically) on DMC records including, but not limited to payroll records, human resources records etc."

After Plaintiff was terminated by DMC, she applied for employment at St. Joseph Mercy Oakland Hospital, and she was hired by St. Joseph Mercy Oakland Hospital in June 2011.

Plaintiff filed a single count Complaint in this Court, wherein she alleges that Defendants violated her FMLA rights by: (1) interfering with and denying her right to be reinstated to her

5

position as staff nurse with DMC upon return from her FMLA leave, and (2) retaliating against Plaintiff for taking FMLA leave. DMC filed a counter-complaint, wherein DMC seeks to recover the $3,636.57 it paid Plaintiff in short-term disability benefits. After the close of the discovery period, Defendant moved for summary judgment in the motion presently before the Court.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."

*Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff claims that her FMLA rights were interfered with and that Defendants retaliated against her for taking FMLA leave. Plaintiff sets forth extensive argument and analysis regarding the legal and factual support for the viability of her FMLA claims. As discussed below, however, Plaintiff ignores and cannot overcome the fact that applicable law provides that Defendants had the right to fire her for her dishonesty when Defendants knew about such dishonesty before terminating her.

**A.     Dishonesty Violates DMC Policy**

The FMLA provides that an employee returning from FMLA leave is entitled to be reinstated to his or her former position, or an equivalent position with regard to pay, benefits and working conditions, 29 U.S.C. § 2614(a)(1), and the FMLA prohibits employers from discriminating or retaliating against employees for taking FMLA leave. 29 U.S.C. § 2615(a)-(b). Significantly, however, the FMLA also provides:

7

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.

29 C.F.R. § 825.216(a). In the words of Plaintiff, this meant that the "DMC had an obligation to treat [Plaintiff] the same, whether or not she took leave. 29 CFR § 825.216(a)."

"Both the [FMLA] statute and [Department of Labor] regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) *(*citing *Arban v. West Pub. Co.*, 345 F.3d 390, 401 (6th Cir. 2003) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."); *Thornberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005) ("As long as an employer can show a lawful reason, *i.e.*, a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights.")). *See also Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002) (holding that employees "may be dismissed" so long as "the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave").

As set forth in the termination letter sent to Plaintiff, she was terminated because she violated:

> . . . DMC's Progressive Discipline Policy, 1 HR 506, Major Infraction "Dishonesty, falsifying or omitting information, either verbally, in written format (including electronically) on DMC records including, but not limited to payroll records, human resources records etc."

It is undisputed that Plaintiff admitted, both at the April 19, 2011, meeting and at her deposition, that

she lied about the use of the wheelchair at the airports on two occasions. Based on such undisputed dishonesty, Defendants had a right to terminate Plaintiff – without regard to her leave status because the FMLA does not afford an employee greater rights than she would have if she was not on FMLA leave. The Court finds that the undisputed evidence shows that, pursuant to the April 25, 2011, letter, Defendants terminated Plaintiff for her dishonesty. Accordingly, the Court finds that Defendants treated Plaintiff "the same, whether or not she took leave," as required and permitted by the FMLA.

In her brief, Plaintiff argues fervently that the investigation by the LTM and the April 19, 2011, meeting conducted by McCarty were pretextual and shams because the decision to terminate Plaintiff was made by LTM on April 13, 2011. Plaintiff also argues that a question of fact exists regarding whether Defendants terminated Plaintiff based on her dishonesty because Defendants "cited different policies in two separate documents, one referring to abuse of FMLA leave and one referring to another internal policy, in an attempt to justify [Plaintiff]'s termination. Thus, their own documents show a shifting explanation for [Plaintiff]'s termination." The Court is not persuaded by Plaintiff's arguments.

First, Plaintiff overlooks the fact that Dicicco did not have the authority to terminate anyone and, in fact, was not one of the DMC employees who signed off on terminate Plaintiff's termination (notably, Dicicco is not even a defendant in this case). Thus, the decision to terminate Defendant did not occur on April 13, 2011, as Plaintiff suggests. The actual decision to terminate Plaintiff was exercised only after the April 19, 2011, meeting. On April 20, 2011, the day after the meeting with Plaintiff, the document titled "Human Resources Termination **Recommendation**" (emphasis added) was prepared by Hunt. As such, even the April 20, 2011, document did not, in itself, effectuate the

9

termination of Plaintiff. In fact, Plaintiff was not terminated until April 25, 2011, when the persons with ultimate authority to terminate Plaintiff signed off on her termination.

Second, although the April 20, 2011, Human Resources Termination Recommendation cited DMC human resources policies related to FMLA leave and medical/general leave, the first items in that document regarding the investigative meeting note that Plaintiff "confirmed and acknowledged [that] . . . [c]ontrary to the email dated March 7 as well as her reported FMLA claim, [Plaintiff] **never** used a wheelchair while in Mexico . . . [and] [c]ontrary to the email dated March 7 as well as her reported FMLA claim, [Plaintiff] was, in fact able to walk for long periods of time while in Mexico (i.e. greater than 30 minutes)" (emphasis in original). These statements, along with the other statements in the Human Resources Termination Recommendation, reflect instances of dishonesty by Plaintiff – and such lies related to events occurring while: (a) employed by DMC, and (b) on FMLA leave during that employment. Accordingly, the fact that the April 25, 2011, termination letter sent to Plaintiff identified dishonesty, a major infraction of DMC's Progressive Discipline Policy, as the basis for her termination (rather than simply identifying FMLA and medical/general leave policies) does not "show a shifting explanation for [Plaintiff]'s termination."

**B.     Honest Belief Doctrine**

Alternatively, the Court finds that Defendants are entitled to summary judgment under the "honest belief" doctrine. An employer is entitled to summary judgment under the "honest belief" doctrine when the employer honestly believes, based on particularized facts, that an employee lied and misused her FMLA leave and disciplines/terminates such employee based on such belief. *See, e.g.*, *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (employer must "establish its reasonable reliance on the particularized facts that were before it at the time the decision was

10

made"). *See also Donald v. Sybra, Inc.*, 667 F.3d 757, 761-63 (6th Cir. 2012) (employer's honest belief that plaintiff engaged in wrongdoing barred plaintiff's FMLA interference and retaliation claims); *Kariotis v. Navistar Interntl.*, 131 F.3d 672 (7th Cir. 1997). If applicable, the honest belief doctrine operates to bar a plaintiff's FMLA interference and retaliation claims

Plaintiff asserts that the "Sixth Circuit has held that the honest belief rule does not apply unless the employer is able to produce *evidence* of its reasonable reliance on *particularized* facts to support its employment action." *Smith v. Chrysler Corp.*, 155 F.3d at 807. Plaintiff suggests that Defendants made the decision to terminate her before the April 19, 2011, investigatory meeting and that Defendants have "presented no witnesses, no affidavits based on personal knowledge concerning fraud, and their own surveillance report" contains nothing incriminating against Plaintiff.[1]

As discussed above, Plaintiff's assertion that Defendants made the decision to terminate her before the April 19, 2011, meeting is not supported by any evidence. Plaintiff's argument also ignores the existence of Plaintiff's own activities (namely her Facebook postings regarding her Mexico vacation, her grandchildren and her trip(s) to Home Depot), her lies about the use of a wheelchair as it related to her FMLA restrictions, and her admissions at the April 19, 2011, meeting. Such activities and admissions constitute *evidence* and *particularized* facts upon which Defendants could reasonably rely to support their decision to terminate Plaintiff. As such, Defendants are also entitled to summary judgment based on their honest belief that Plaintiff lied and misused her FMLA leave.

---

[1] DMC hired a firm to conduct surveillance of Plaintiff. The firm attempted surveillance on only one day, March 28, 2011, but the firm did not observe Plaintiff that day.

11

## V. CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket #23) is GRANTED. Plaintiff's cause of action is therefore DISMISSED WITH PREJUDICE.

Based on the Court's ruling, the only remaining claim before the Court is DMC's counter-claim to recover $3,636.57 in short-term disability benefits it paid to Plaintiff. In its summary judgment motion, however, DMC stated that, if its summary judgment motion were granted, DMC would "stipulate to dismissal of its counter-claim so as to bring this matter to a conclusion." As Defendant's summary judgment motion has been granted and Plaintiff did not object to Defendant's representation, the Court hereby ORDERS DMC and Plaintiff to prepare and submit a stipulation of dismissal regrading DMC's counter-claim within one week of the date of this Opinion and Order.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff  
LAWRENCE P. ZATKOFF  
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2013